**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 12-1014**

───────────────

GREAT AMERICAN INSURANCE COMPANY,

       Plaintiff - Appellee,

   v.

HINKLE CONTRACTING CORPORATION, now known as Hinkle
Contracting Company, LLC,

       Defendant - Appellant.

───────────────

Appeal from the United States District Court for the Southern
District of West Virginia, at Charleston.  Joseph R. Goodwin,
Chief District Judge. (2:11-cv-00396)

───────────────

Argued: October 4, 2012       Decided: November 28, 2012

───────────────

Before KING, KEENAN, and THACKER, Circuit Judges.

───────────────

Vacated and remanded by unpublished opinion.  Judge Keenan wrote
the opinion, in which Judge King and Judge Thacker joined.

───────────────

**ARGUED:** Buckner Hinkle, Jr., STITES & HARBISON, PLLC, Lexington,
Kentucky, for Appellant.  Timothy Dale Martin, WARD, HOCKER &
THORNTON, Louisville, Kentucky, for Appellee.  **ON BRIEF:** Steven
M. Henderson, STITES & HARBISON, PLLC, Louisville, Kentucky;
Stephen Lee Thompson, BARTH-THOMPSON, Charleston, West Virginia,
for Appellant.  Harold F. Salsbery, FROST BROWN TODD, LLC,
Charleston, West Virginia, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

This appeal concerns the scope of an arbitration clause contained in a written agreement between a general contractor and subcontractor (the subcontract), which was incorporated without limitation in a performance bond issued by a surety guaranteeing the subcontractor's obligations. After the subcontractor defaulted, the surety filed the present declaratory judgment action against the general contractor seeking to avoid the surety's obligations under the performance bond. The general contractor responded by seeking a dismissal or stay of the declaratory judgment proceedings pending arbitration of the parties' dispute.

The district court determined that the surety's claims were not arbitrable, holding that the parties intended to exclude claims brought by the surety under the terms of the performance bond. The district court therefore denied the general contractor's motion for stay or dismissal of the proceedings pending arbitration. We reverse the district court's decision based on the broad scope of the arbitration clause, which manifested the parties' intent that all claims "arising from or relating to" the subcontract be subject to arbitration.

I.

In November 2009, the West Virginia Department of Transportation (WVDOT) hired Hinkle Contracting Corporation, LLC (Hinkle) as the general contractor for construction of a portion of a highway in Mingo County.  Hinkle entered into a subcontract with Chapman-Martin Excavation and Grading, Inc. (CME or the subcontractor) to perform the grading and drain work for the highway project.

As required by the subcontract, CME obtained both a performance bond and a payment bond.  Great American Insurance Company (Great American or the surety) issued those bonds, naming CME as principal and Hinkle as obligee.  The performance bond, the only bond at issue in the present case, stated that Hinkle and CME had entered into the subcontract, and that the "subcontract is by reference made a part hereof."  The performance bond also stated that if CME defaulted on its obligations under the subcontract, Great American was required to remedy CME's default either by providing for completion of CME's work or by compensating Hinkle financially for the reasonable costs of completing that work.  Finally, the performance bond stated that "[a]ny suit under this bond must be instituted" within two years from the due date of the final payment under the subcontract.

After obtaining the required bonds, CME began its work on the highway project. In September 2010, Hinkle notified CME that it was in default for failing to complete certain work. Hinkle and CME entered into negotiations to cure the default and ultimately executed a "change order" to the subcontract, which modified CME's contractual obligations. The change order established new deadlines for the completion of various phases of CME's work, and included provisions for an award of liquidated damages to Hinkle in the event that CME defaulted on its obligations under the change order.

Several months later, Hinkle again declared CME in default, citing CME's failure to complete its work as required by the subcontract and the change order. In March 2011, Hinkle notified Great American that CME was in default and demanded payment from Great American under the terms of the performance bond.

Great American filed a complaint in the district court against Hinkle seeking a declaratory judgment that Great American was not liable under the performance bond, primarily because the change order materially altered "the financial obligations under the [s]ubcontract in the event of default by CME." Great American alleged that the terms in the change order were not "within the reasonable contemplation of Great American" when it issued the performance bond.

4

In an amended complaint, Great American raised an additional claim. In that claim, Great American alleged that Hinkle breached the terms of its contract with WVDOT, which was incorporated into the subcontract, by failing to pay CME for work performed under the subcontract. Great American accordingly sought an order requiring Hinkle to provide an accounting of payments received from WVDOT and to deposit with the district court funds owed to CME.

Hinkle filed a motion to dismiss or stay the proceedings pending arbitration, pursuant to Hinkle's notice and demand for arbitration issued in July 2011. Hinkle asserted that because the performance bond incorporated the subcontract in its entirety, including the provisions granting Hinkle an exclusive right to demand arbitration, Great American was obliged to submit its claims to arbitration.

The language at issue in the subcontract is contained in Section 16, which is entitled "Dispute Resolution." Included in this section is a provision stating that "[a]ll claims, disputes, controversies and matters in question (hereinafter 'Claims') arising out of, or relating to, this [subcontract] or the breach thereof . . . shall be resolved by mediation followed by arbitration or litigation at [Hinkle's] sole option."

The district court denied Hinkle's motion to dismiss or stay the proceedings pending arbitration. The court concluded

5

that although the arbitration clause states that it applies to all claims arising out of or relating to the subcontract, other language in the subcontract demonstrates the parties' intent to limit the scope of arbitrable disputes. In support of its conclusion, the court relied on Section 16.2(e), which details dispute resolution procedures. That provision states, in relevant part:

> If a disputed Claim remains unresolved after negotiation and mediation, [Hinkle] shall have the exclusive option either to have the dispute decided by a court or by arbitration . . . . [Hinkle], Subcontractor and Subcontractor's surety agree that the disputed Claim shall be resolved in the appropriate forum selected by [Hinkle] at its sole discretion. If Subcontractor or its surety first commences a court action with respect to a dispute which [Hinkle] desires to have determined by an arbitration proceeding, or if Subcontractor or its surety first commences an arbitration proceeding which [Hinkle] desires to have determined by a court, [Hinkle] shall commence the arbitration proceeding or court action . . . within thirty (30) calendar days after receiving service of Subcontractor's complaint or arbitration demand. If, at any time . . . [Hinkle] becomes involved in litigation or arbitration with another party or parties involving questions of fact or law common to the dispute between [Hinkle] and Subcontractor to the extent that (a) in Subcontractor's absence, complete relief cannot be accorded among those already parties, or (b) disposition of such other action may as a practical matter, impair or impede [Hinkle's] or Subcontractor's ability to fully prevent its incurring multiple or otherwise inconsistent obligations, then Subcontractor and its surety may be joined by [Hinkle] in such other litigation or arbitration proceedings for complete resolution of all disputes and controversies arising under this [subcontract] and that upon such joinder, any pending action between [Hinkle] and Subcontractor shall be dismissed. (Emphasis added.)

6

The court also cited Section 16.2(f), which addresses the procedure for appointing arbitrators and states, "<u>Subcontractor and [Hinkle]</u> shall each appoint one member of the [arbitration] panel," and those two members together will appoint a third member of the arbitration panel.  (Emphasis added.)

The district court observed that the language in these provisions included references to the subcontractor and the surety in some instances, but in other instances referenced only the subcontractor.  Based on these inconsistencies, the court determined that claims brought by Great American as surety are subject to arbitration only when they deal with the rights and obligations of the subcontractor. Concluding that Great American's present claims are not related to CME's obligations under the subcontract, but constitute "unique surety claims" or "surety defenses" arising from obligations under the performance bond, the court held that Great American's present claims are not subject to arbitration.  Hinkle timely filed in this Court an appeal challenging the denial of its motion to dismiss or to compel arbitration.

## II.

Our standard of review in this case is well established. We review de novo the district court's holding that Great American's claims are not arbitrable under the terms of the

7

subcontract incorporated in the performance bond. See Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l. Union, 665 F.3d 96, 101 (4th Cir. 2011).

Hinkle argues that because the dispute resolution provisions of Section 16 (the arbitration clause) broadly encompassed all claims "arising under or relating to" the subcontract, the district court erred in concluding that this language was limited by other terms of that clause. According to Hinkle, the district court should have examined the scope of the arbitration clause under the "significant relationship" test used by this Court in American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996). Hinkle contends that Great American's claims are subject to arbitration under this test because those claims bear a significant relationship to the subcontract, irrespective of the "suretyship" label that Great American seeks to attach to them.

In response, Great American argues that it did not agree to arbitrate disputes concerning the terms of the performance bond simply by incorporating the subcontract into the bond. Great American asserts that its defenses originate solely under the performance bond and, thus, constitute "unique" surety defenses that are not subject to arbitration. As further support for its argument, Great American maintains that the word "[c]laims" is used in the subcontract solely with reference to disputes

8

between CME and Hinkle, or disputes between CME and WVDOT. Thus, according to Great American, only claims involving those entities are subject to arbitration under the terms of the subcontract. Finally, Great American contends that because the arbitration clause allows only CME and Hinkle to choose arbitrators and only describes disputes arising between them, the parties did not manifest an intent that Great American be subject to arbitration of its performance bond obligations. We disagree with Great American's arguments.

A.

We begin by reviewing the principles guiding a court's determination whether a particular dispute is arbitrable. Under the Federal Arbitration Act (the FAA), 9 U.S.C. §§ 1-16, a court is required to stay an action or proceeding pending the arbitration of claims covered by the terms of the parties' written agreement. Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (citing 9 U.S.C. § 3). Because the FAA in essence guarantees the enforcement of a private contract, courts first must consider the contract's terms in ascertaining the scope of an arbitration agreement contained therein. E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002).

A party may compel arbitration under the FAA by demonstrating: (1) a dispute between the parties; (2) a written agreement containing an arbitration provision that could be read

9

as covering the dispute; (3) the relationship of the transaction to interstate or foreign commerce, as evidenced by the agreement; and (4) the failure, neglect, or refusal of the defendant to submit the dispute to arbitration. See Adkins, 303 F.3d at 500-01. The issue in the present case relates to the second requirement, raising the question of contract interpretation as to whether Great American's claims are arbitrable. See Am. Recovery, 96 F.3d at 92.

A party will not be required to arbitrate a dispute that the party has not agreed to submit to arbitration. United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). However, under decisions interpreting the FAA, courts must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); Wachovia Bank Nat'l Ass'n v. Schmidt, 445 F.3d 762, 767 (4th Cir. 2006) (citation omitted).

An issue will be classified as being outside the scope of an arbitration provision only when the parties have manifested such an intent in their written agreement. Peabody, 665 F.3d at 104 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995)). Because sophisticated parties negotiate their written contracts with an understanding of this policy favoring arbitration, courts require this degree of clarity before

10

determining that a particular claim is not subject to an arbitration provision. Id. (citing First Options, 514 U.S. at 945). Thus, when the scope of an arbitration clause remains "open to question" regarding the inclusion of a particular issue, a court must declare that the issue is subject to arbitration. Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989).

## B.

Informed by these principles, we turn to consider whether the district court properly concluded that the arbitration clause excluded Great American's claims. In relevant part, the arbitration clause states that all claims "arising out of, or relating to the subcontract or breach thereof . . . shall be resolved by mediation followed by arbitration or litigation," at Hinkle's sole option. Courts ordinarily construe such clauses, which contain the phrase "arising out of or relating to" or similar language, as having an "expansive reach." Am. Recovery, 96 F.3d at 93 (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967)).

In partial limitation of this broad language in Section 16, the arbitration clause contains one express exclusion, which appears in Section 16.2(g) of the subcontract. This express exclusion states that "[t]he provisions of this Section 16 [addressing Dispute Resolution] do not preclude litigation for

11

injunctive relief." (J.A. 94.) No other types of claims are expressly excluded from arbitration in the arbitration clause.

The district court nonetheless determined that certain language in Section 16.2(e) relating to dispute resolution procedures, including three references to the subcontractor without accompanying references to the surety, demonstrated the parties' intent to exclude from arbitration claims unique to the surety. We disagree that the absence of such references to the surety manifests a clear intent to exclude Great American's present claims from arbitration, particularly when the surety's participation in arbitration proceedings is referenced numerous times throughout Section 16.2(e). See United Steelworkers of Am., 363 U.S. at 584-85 (in the absence of an express provision excluding claims, "only the most forceful evidence" of an intent to exclude can prevail, particularly when the arbitration clause is broad).

Most notably, the first part of Section 16.2(e) states that Hinkle, the subcontractor, and the surety "agree" that after attempting to negotiate a disputed claim, Hinkle "shall have the exclusive option either to have the dispute decided by a court or by arbitration." That section also anticipates that either the subcontractor or its surety may commence litigation or arbitration proceedings.

In addition, contrary to Great American's contention, the subcontract does not employ the term "claims" solely with reference to disputes between CME and Hinkle, or those between CME and WVDOT. The express language of Section 16 provides that the term "[c]laims" includes, with exceptions not relevant here, "[a]ll claims, disputes, controversies and matters in question." And, as stated above, the arbitration clause provides that such claims "arising out of, or relating to, this [subcontract] or the breach thereof . . . shall be resolved by mediation followed by arbitration or litigation at Hinkle's sole option."

When read in this context, the references relied on by the district court demonstrate, at best, an uncertainty concerning the scope of arbitrable claims asserted by the surety. Under federal policy, this type of ambiguity generally triggers a presumption that such claims are subject to arbitration under the parties' agreement. See Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. Thus, we turn to consider whether Great American's claims against Hinkle fall within the broad scope of the arbitration clause, as claims "aris[ing] under or relat[ing] to" the subcontract.

Great American asserts that its claims bear a general, rather than a significant, relationship to the subcontract, because those claims are "surety defenses" arising under the

13

bond.  We disagree with this attempt to shield the claims from the broad reach of the arbitration clause.

In American Recovery, we explained that in contrast to narrow arbitration clauses, which only encompass claims "arising under" a contract, broad arbitration clauses like the present one embrace "every dispute between the parties having a significant relationship" to the contract, regardless of the label that a party chooses to assign to a particular claim.  96 F.3d at 93 (citing J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988)); see also Wachovia, 445 F.3d at 767; Long v. Silver, 248 F.3d 309, 316-17 (4th Cir. 2001).  In determining whether such a significant relationship exists, a court must review the factual allegations underlying the particular claim and evaluate the connection between those allegations and the contract containing the arbitration clause. Am. Recovery, 96 F.3d at 93.

Great American alleged in its primary claim that its obligations under the performance bond were void, based on Hinkle's material alteration of the subcontract by effecting the change order.  In support of this claim of material alteration, Great American asserted that: (1) the change order included a liquidated damages provision, contrary to the original provisions of the subcontract prohibiting such damages; and (2) the change order included new deadlines for CME's completion of

14

work that were not contained in the original subcontract. We conclude that the allegations contained in this claim bear a significant relationship to the subcontract, because they are premised on the differences between the terms of the subcontract and the terms of the change order.

Great American also alleged in its amended complaint that Hinkle breached the terms of the subcontract, which fully incorporated Hinkle's contract with WVDOT, when Hinkle failed to pay CME for completed work upon Hinkle's receipt of payment for that work from WVDOT. Because this claim on its face requires an examination of Hinkle's obligations under the subcontract regarding payment to CME, we conclude that this claim also bears a significant relationship to the subcontract. Accordingly, we conclude that Great American's present claims against Hinkle bear a significant relationship to the subcontract, regardless of the particular label that Great American assigns to them. See Am. Recovery, 96 F.3d at 93 (citing J.J. Ryan & Sons, 863 F.3d at 321). Given this significant relationship between the claims asserted and the subcontract, we hold that those claims fall within the scope of the arbitration clause.[*]

---

[*] We are not persuaded by Great American's argument that the performance bond incorporated the subcontract only for the purpose of defining Great American's secondary obligations, and did not bind Great American to the arbitration clause. The incorporation of the subcontract into the performance bond was
(Continued)

15

III.

For these reasons, we hold that the district court erred in denying Hinkle's motion seeking dismissal or stay of the proceedings pending arbitration. We therefore vacate the district court's judgment and remand the case for further proceedings consistent with the principles expressed in this opinion.

VACATED AND REMANDED

---

not qualified or limited in any manner, and the performance bond lacks any language reflecting an intent by the parties to resolve disputes in a manner inconsistent with the terms of the subcontract. Additionally, Great American's reliance on AgGrow Oils, LLC v. National Fire Ins. Co. of Pittsburgh, PA, 242 F.3d 777 (8th Cir. 2001), is unpersuasive, based on the dissimilar language in the performance bond in that case regarding litigation of disputes.